MAX N. TOBIAS, JR., Judge.
| ¶This is an appeal by the Esplanade Ridge Civic Association (“ERCA”) from a judgment rendered by the trial court that affirmed a decision of the City of New Orleans’ Board of Zoning Adjustments (“BZA”) that granted a zoning variance for 2535 Esplanade Avenue. After reviewing the record and applicable law, we affirm the decision of the district court.
ERCA is a non-profit corporation dedicated to promoting the development, redevelopment, and renewal of the area of the city from North Rampart Street to North Broad Street and from Orleans Avenue to St. Bernard Avenue. ERCA has a number of members living in the immediate vicinity of 2585 Esplanade Avenue.
The property located at 2535 Esplanade Avenue is located in a RM-3 Multiple-Family Residential District. GCHP Esplanade, LLC. (“GCHP”) has proposed to construct a facility of forty individual apartments at that address, that will include twenty “permanent supportive housing” units. According to the materials supplied by GCHP, “supportive housing” combines permanent, affordable housing with “onsite supportive services.”
[2To that end, GCHP has filed several different applications with the BZA since March 2010 to obtain the necessary zoning variances to develop the property; ERCA has opposed GCHP’s efforts at every step. Particularly pertinent to this case is GCHP’s January 2011 variance application to the BZA for a setback waiver. Prior to the BZA hearing on GCHP’s application, Paul May, then-Director of Safety & Permits of the City of New Orleans, issued a decision letter stating that the proposed use of 2535 Esplanade as represented in GCHP’s BZA application, including the existence of a case management office, was not permitted because it did not comply with the city’s Comprehensive Zoning Ordinance (“CZO”) permitted uses in the RM-3 district in which the property is located. GCHP appealed this determination to the BZA, and the matter was ultimately set for hearing on 16 November 2011.
At the BZA’s public hearing, GCHP appeared to appeal the determination set out in the Paul May letter. After considering the facts and arguments by those who spoke at the hearing, the BZA granted GCHP’s appeal and ordered that Paul May’s determination should not be interpreted in a way that would deprive GCHP of any of its rights under the federal Fair Housing Act (“FHA”), 42 U.S.C.A. § 3601, et seq. In addition, the BZA ordered that GCHP’s request for a reasonable accommodation under the FHA be placed on the BZA’s agenda for its next meeting in December 2011. The BZA also noted that Paul May’s determination failed to take into consideration GCHP’s request for reasonable accommodations under the FHA.
| aAt the public hearing, GCHP’s request for a reasonable accommodation under the FHA was granted by the BZA. Specifically, GCHP was permitted to operate a case management office on site, and was not required to provide any additional parking spaces.
ERCA appealed the BZA’s decision to the district court pursuant to La. R.S. *169 38:4727. After the hearing, the district court upheld the BZA’s decision, finding that the BZA properly designated 2535 Esplanade as “multi-family” housing under the CZO and acknowledging that the FHA required the BZA to make a reasonable accommodation to GCHP so that it could offer equal opportunity housing to the handicap community. In its reasons, the district court specifically stated that “the BZA did not abuse its authority so as to warrant reversal given its attempt to comply with federal law.” This timely appeal followed.
Questions of law are reviewed by this court under the de novo standard of review. Cordes v. Board of Zoning Adjustments, 09-0976, p. 6 (La.App. 4 Cir. 1/20/10), 31 So.3d 504, 508, citing Sarpy v. ESAD, Inc., 07-0347, p. 4 (La.App. 4 Cir. 9/19/07), 968 So.2d 736, 738. The purpose of certiorari review by the district court of decisions of boards and quasi-judicial tribunals is to “determine whether jurisdiction has been exceeded, or to decide if the evidence establishes a legal and substantial basis for the Board’s decision.” Elysian Fields, Inc. v. St. Martin, 600 So.2d 69, 72 (La.App. 4th Cir.1992). A decision of the BZA is afforded a presumption of validity. Flex Enterprises, Inc. v. City of New Orleans, 00-0815, p. 6 (La.App. 4 Cir. 2/14/01), 780 So.2d 1145, 1149. However, the presumption is 14rebuttable. Curran v. Board of Zoning Adjustments through Maso, 580 So.2d 417, 418 (La.App. 4th Cir.1991). In King v. Caddo Parish Com’n, 14-15 (La.10/20/98), 719 So.2d 410, 418, the Court stated:
The test of whether a zoning board’s action is arbitrary and capricious is whether the action is reasonable under the circumstances. Papa [v. City of Shreveport, 27,045, pp. 4-5 (La.App. 2 Cir. 9/29/95),] 661 So.2d [1100] at 1103; (citing Clark v. City of Shreveport, 26,638 (La.App. 2 Cir. 5/10/95), 655 So.2d 617); Castle Investors v. Jefferson Parish Council, 472 So.2d 152 (La.App. 5th Cir.); writ denied, 474 So.2d 1311 (La.1985). “A reviewing court does not consider whether the district court manifestly erred in its findings, but whether the zoning board acted arbitrarily, capriciously or with any calculated or prejudicial lack of discretion.” Papa, supra, 27,045 at pp. 4-5, 661 So.2d at 1103.
Under La. R.S. 33:4727 A(l), a board of adjustment “may determine and vary” zoning regulation applications “in harmony with their general purpose and intent and in accordance with the general or specific rules contained therein.” Under La. R.S. 33:4727 C(3)(c), a board of adjustment (here, the BZA) is mandated to:
In passing upon appeals, where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the ordinance, to vary or modify the application of any of the regulations or provisions of the ordinance relating to the use, construction, or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done.
Under La. R.S. 33:4727 E, the district court, upon petition for review, may allow a writ of certiorari to review decisions by the board of adjustment. The district court may take additional testimony or receive additional evidence as part | fjOf its consideration of such an appeal from the board of adjustment. La. R.S. 33:4727 E(4). Such additional evidence and testimony may be entertained whenever the district court is of the opinion it is warranted. Lakeshore Property Owners Ass’n, Inc. v. City of New Orleans Board of Zoning Adjustments, 481 So.2d 162, 165 (La.App. 4th Cir.1985).
*170 The Home Rule Charter of the City of New Orleans created the City Planning Commission, which consists of nine members appointed by the Mayor with the approval of the City Council. See New Orleans Home Rule Charter, Art. V, § 5-401. New Orleans Home Rule Charter, Art. V, § 5-408(1) provides that the BZA is attached to the City Planning Commission and consists of seven members appointed by the Mayor with the approval of the City Council. Pursuant to New Orleans Home Rule Charter, Art. V, § 5-408(2), the BZA has the authority to:
(a) Hear and determine appeals from applicants who have been refused building permits because of a violation or conflict with the zoning ordinance or the official map of the City. ,
(b) Hear and decide appeals where error is alleged in any order, requirement, decision, or determination made by an administrative official in the enforcement of the zoning ordinance of the City.
(c) Have the power to permit variations from the zoning regulations in classes of cases or situations and in accordance with the principles, conditions, and procedures specified in and subject to the limitations imposed by the zoning ordinances of the City.
The CZO create a number of different districts, each of which' has a purpose, and various proscribed uses: authorized, permitted, accessory, and conditional. Section 4.11 of the CZO addresses the RM-3, Multiple-Family Residential District, Rin which the subject property is located. The purpose of the district is to “provide for a variety of dwelling types of medium-high density while protecting the character of the surrounding area by limiting uses and signs. New Orleans CZO, § 4.11.1. One of the permitted uses in the RM-3 district is “multiple family dwellings.” New Orleans CZO, § 4.11.3(4). Accessory uses in the RM-3 district include an office, a laundry room, coin-operated vending machines, and a dining room in multiple-family dwellings with ten to fifty dwelling units. New Orleans CZO, § 4.11.4(2), (3), (6), (7). Thus, an apartment building consisting of forty dwelling units is a permitted use in a RM-3 district. An apartment is defined in the CZO as “[a] dwelling unit with culinary facilities designed for or used as a living quarters for a family.” New Orleans CZO, § 2.2(9).
The evidence in the record reveals that the property, formerly a forty-room nursing home, was obtained by GCHP for the purpose of renovating the property to create a total of forty efficiency apartments. It intends to rent twenty of the units to formerly homeless individuals with disabilities with onsite supportive services and the remaining units to low-income individuals. The apartments provide permanent, rather than temporary, housing.
The ERCA attempts to characterize the property as a “residential care center,” defined by New Orleans CZO, § 2.2(151) as:
Residential Care Center. A building other than an' apartment hotel, hotel, small or large group home, rooming house, tourist home, motel or motor lodge, providing temporary lodging and board and a special program of specialized care and counseling on a full-time basis for fifteen (15) or more individuals who are displaced from their normal living environment, where such building is operated under the auspices of an entity which is designated as educational, religious, eleemosynary, public or nonprofit by the . Federal Internal |7Revenue Service and are licensed by the State of Louisiana.
Residential care centers are permitted in a RM-4 district but not in a RM-3 district.
*171 By characterizing the subject property as a “residential care center,” the ERCA argues that the BZA exceeded its authority under the Home Rule Charter because the proposed main use of the property is not a permitted use in a RM-B district. In other words, the BZA’s decision resulted in an illegal zoning change. In particular, the ERCA points to the proposed existence of full-time supportive services in addition to the dwelling units. The GCHP proposal states that supportive housing “combines affordable apartments with case management, social support and employment services.” The ERCA also contends that the presence of a “case management office” supports its argument that this most closely resembles a residential care center, not a multiple family dwelling.
In response, the City argues that the subject property does not fall within the definition of a residential care center because the facility provides neither temporary lodging nor board. Instead, the proposed facility provides permanent housing via forty apartments. It also asserts that the ERCA is attempting to create the phrase “supportive housing unit” as a new term under the CZO so that it can claim that there are actually twenty “apartments” and twenty “supportive housing units” at the facility. The CZO does not contain a definition or classification for “supportive housing units.” Instead, it defines “apartment,” which requires its own culinary facilities, which all the apartments in question will contain.[1]
As we stated in Palm-Air Civic Ass’n, Inc. v. Syncor Int’l Corp., 97-1485, p. 7 (La.App. 4 Cir. 3/4/98), 709 So.2d 258, 262:
|sThe first principle of zoning law is that because zoning ordinances are in derogation of a citizen’s constitutionally protected right to own and use his property, they must be construed, when subject to more than one reasonable interpretation, according to the interpretation which allows the least restricted use of the property. City of New Orleans v. Elms, 566 So.2d 626, 632 (La.1990), superseded by Statute, see Parish of Jefferson v. Jacobs, 623 So.2d 1371 (La.App. 5 Cir.1993). The Supreme Court reiterated the arbitrary and capricious standard that had been found in our jurisprudence as early as 1923 (State ex rel. Civello, 154 La. 271, 97 So. 440 (1923)) in Palermo Land Co. v. Planning Com’n of Calcasieu Parish, 561 So.2d 482, 493 (La.1990), holding that the burden of proof is on plaintiffs to show an arbitrary and unreasonable exercise of authority, and that whenever the propriety of a zoning decision is debatable, it will be upheld. Thus, doubts as to the reasonableness of the City’s action in issuing the permits at issue herein are to be resolved in favor of the defendants.
Despite the availability of “supported services” for some of the tenants of the proposed facility, we find that this proposed structure most closely resembles an apartment building, or as stated in the RM-3 district, a “multiple family dwelling,” than a “residential care center.” This interpretation results in the least restricted use of the property. Thus, we find that the BZA had the authority to hear the instant matter and, further, did not abuse its discretion by granting the variances. Even if we were to find the BZA’s decision debatable, which we do not, we are bound to uphold it.
We note, however, that GCHP appeared before the BZA and requested a reasonable accommodation under the terms of *172 the FHA. This request was granted by the BZA.
The FHA, through 42 U.S.C.A. § 3615, applies to the City of New Orleans:
Nothing in this subchapter shall be construed to invalidate or limit any law of a State or political subdivision of a State, or of any other jurisdiction in |flwhich this subchapter shall be effective, that grants, guarantees, or protects the same rights as are granted by this subchapter; but any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid.
Furthermore, it is unlawful under the FHA and considered discrimination for the City of New Orleans to refuse “to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person [including the disabled] equal opportunity to use and enjoy a dwelling.” 42 U.S.C.A. § 3604(f)(3)(B).
Thus, any interpretation of the CZO is subject to the terms of the FHA and the application of reasonable accommodations. Oxford House-C v. City of St. Louis, 77 F.3d 249, 251 (8th Cir.1996); Groome Resources, Ltd., L.L. C. v. Parish of Jefferson, 52 F.Supp.2d 721, 724 (E.D.La.1999). An accommodation is reasonable if it “does not cause any undue hardship or fiscal or administrative burdens on the municipality, or does not undermine the basic purpose that the zoning ordinance seeks to achieve.” Oxford House v. City of Baton Rouge, Louisiana, 932 F.Supp.2d 683, 692 (M.D.La.2013) citing, Oxford House, Inc. v. Town of Babylon, 819 F.Supp. 1179, 1186 (E.D.N.Y.1993); see also Oxford House, Inc. v. Township of Cherry Hill, 799 F.Supp. 450, 461 (D.N.J.1992)(noting that an accommodation is unreasonable if it “either imposes undue financial and administrative burdens ... or requires a fundamental alteration in the nature of the program[.]” (Internal citations and quotations omitted)). Because we find that this facility most closely resembles a “multiple family dwelling,” as permitted in a RM-3 district, the basic purpose of the zoning ordinance is achieved and an undue hardship or burden is not imposed on the city.
| inThe BZA appropriately considered GCHP’s request for reasonable accommodations and correctly granted the same. We cannot say and do not find that the BZA erred in its application of the FHA in this matter.
Based on the foregoing, we find in favor of the City of New Orleans and dismiss the instant appeal with prejudice.

AFFIRMED.

LOBRANO, J., concurs with reasons.

. We also note that a "case management office” is not defined in the CZO.