SANDRA CABRINA JENKINS, Judge.
|! This is a zoning dispute over a live entertainment permit issued to Antoine’s Restaurant, L.L.C. (“Antoine’s”) by the Department of Safety and Permits (the “Department”). Antoine’s submitted an application for a live entertainment permit to the Department along with fourteen affidavits attesting to the nonconforming use of live entertainment at Antoine’s. Although it is undisputed that Antoine’s is situated within a zoning district in which live entertainment is not a permitted use under the current Comprehensive Zoning Ordinance (“CZO”),[1] the Director of the Department approved the permit for live entertainment based on a determination that Antoine’s had established by sufficient evidence the existence of a legal nonconforming use.
The Vieux Carre Property Owners, Residents & Associates, Inc., French Quarter Citizens, Inc., and Carol Allen (collectively the “Plaintiffs”), filed an appeal with the Board of Zoning Adjustments (“BZA”) seeking to overturn the determination that Antoine’s sufficiently established the existence of a legal ^nonconforming use in accordance with the requirements of the CZO. The BZA denied Plaintiffs’ appeal and upheld the decision of the Department. Plaintiffs then sought judicial review of the BZA decision in the district court, which found that the BZA’s decision was not arbitrary, capricious, or manifestly erroneous and affirmed the BZA’s decision. Plaintiffs’ timely appeal to this Court followed.[2]
Upon our review of the record in light of the applicable law and standard of review, we affirm the district court’s judgment and uphold the BZA’s decision.
FACTUAL AND PROCEDURAL BACKGROUND
Antoine’s is the oldest continuously operating restaurant in New Orleans. Antoine’s opened its original restaurant in 1840, moved to its current location at 713 St. Louis Street in 1868, and continued to expand its business through the acquisition of several adjoining lots of record (719, 723, and 725 St. Louis Street, and 513 and 519 Royal Street).[3] Since 1940, Antoine’s *876 has operated its restaurant out of a complex of buddings and several distinct dining areas that are all connected to one another through an intricate set of passageways. Similar to other businesses in the French Quarter that operate out of adjoining buildings upon several lots of record, Antoine’s operates as a single business entity under one occupational license issued for the entirety of its complex.[4]
| sIn 2008, Antoine’s began renovating one of its distinct dining areas, the Hermes Room, to re-designate it the Hermes Bar. Antoine’s applied for and received building permits for the renovations from the Department,[5] and, in December, 2010, Antoine’s received the Certificate of Occupancy and Completion for the “renovation (non-structural)” at 713 St. Louis Street. The conversion into the Hermes Bar included the installation of a full bar and an exterior entrance on St. Louis Street, next to the main entrance of Antoine’s; it also maintains access to and from the restaurant complex by three interior passageways. Rather than the traditional Antoine’s menu formerly served in the Hermes Room, the Hermes Bar offers a more casual Antoine’s fare, cocktails, and live entertainment.
On April 11, 2011, Antoine’s received a letter from the Dept, of Safety & Permits stating that live entertainment was not a permitted use at “713 St. Louis Street (Hermes Bar)” because the property is zoned VCC-2, Vieux Carre Commercial, under the Comprehensive Zoning Ordinance (CZO). Upon receipt of the letter, Antoine’s filed an application for a Mayoralty Permit to be issued to Antoine’s for its live entertainment.[6] Along with the application, Antoine’s submitted fourteen (14) affidavits from staff members and owners of Antoine’s attesting to each person’s knowledge that Antoine’s has offered live entertainment as part of its operation on a continuous, uninterrupted basis, since as far back as L1955. The application and affidavits were submitted to the Department and reviewed by the Director, Paul May, who approved the issuance of the Mayoralty Permit for live entertainment to Antoine’s on April 15, 2011.[7]
In granting the application for the live entertainment permit, the Director noted that the application was “approved pursuant to affidavits of non-conforming use” and such nonconforming status would be “re-examined if contrary documentation is submitted to the City.”
On May 31, 2011, Plaintiffs filed an appeal of the Director’s decision with the BZA seeking the rescission of the live entertainment permit to Antoine’s. In their appeal, Plaintiffs argued that the live *877 entertainment permit issued “at a cocktail lounge at one property (713 St. Louis)” was being used “in an attempt to legitimize an illegal use at another parcel (725 St. Louis);” that Antoine’s failed to establish a nonconforming use because the submitted affidavits failed to establish the “4-hour, 5-day use required by the CZO;” and “the operation of the cocktail lounge itself is clearly an illegal use for the property where the live entertainment license was sought.”
On December 12, 2011, the BZA held a public hearing on Plaintiffs’ appeal. After considering the facts, arguments for and against the appeal, and the pertinent CZO regulations, the BZA voted on a motion to deny the appeal, “based on the fact that the [Plaintiffs] did not meet the burden of proof’ to overturn the decision of the Director of Safety and Permits. The BZA voted unanimously to deny | BPlaintiffs’ appeal and uphold the decision of the Director of Safety and Permits to issue the permit to Antoine’s.
On January 11, 2012, Plaintiffs filed a petition for writ of certiorari in the district court seeking judicial review of the BZA’s decision, in accordance with La. R.S. 33:4727(E). As part of its consideration of the matter on certiorari review, the district court allowed Antoine’s to join the matter as a defendant-in-intervention and allowed the introduction of the deposition of Paul May as additional evidence.[8] After a hearing on February 13, 2014, the district court took the matter under advisement and rendered a judgment affirming the BZA’s decision on April 4, 2014. In its reasons for judgment, the district court found the BZA’s decision denying Plaintiffs’ appeal and upholding the decision of the Director of Safety and Permits was not arbitrary, capricious, or an abuse of discretion; or manifestly erroneous in light of the substantial evidence in the record.
Plaintiffs now appeal the district court’s judgment affirming the BZA’s decision.
STANDARD OF REVIEW
Zoning laws and decisions fall within the legislative function of the state and local municipalities. Toups v. City of Shreveport, 10-1559, pp. 3-4 (La.3/15/11), 60 So.3d 1215, 1217. Consequently, the courts afford a presumption of validity to the decisions of zoning boards. Cordes v. Bd. of Zoning Adjustments, 09-0976, p. |fi6 (La.App. 4 Cir. 1/20/10), 31 So.3d 504, 508; Flex Enterprises, Inc. v. City of New Orleans, 00-0815, p. 6 (La.App. 4 Cir. 2/14/01), 780 So.2d 1145, 1149. However, that presumption is rebuttable; and a party aggrieved by a decision of the BZA is entitled to judicial review through a writ of certiorari. Cordes, 09-0976, p. 6, 31 So.3d at 508; see also La. R.S. 33:4727(E); La. R.S. 49:964. The purpose of certiorari review of the BZA decision is to determine whether the evidence establishes a legal and substantial basis for the decision or whether the BZA has exceeded its jurisdiction and acted in an arbitrary and capricious manner. Esplanade Ridge Civic Ass’n v. City of New Orleans, 13-1062, p. 3 (La.App. 4 Cir. 2/12/14), 136 So.3d 166, 169; Elysian Fields, Inc. v. St. Martini 600 So.2d 69, 72 (La.App. 4th Cir.1992). “The test of whether a zoning board’s action is arbitrary and capricious is whether the action is reasonable under the circumstances.” Esplanade Ridge, 13-1062, p. 4, 136 So.3d at 169 quoting King v. Caddo Parish Com’n, 97-1873, p. 14 (La.10/20/98), 719 So.2d 410, 418. “[W]hen there is room for two opinions, an action is not arbitrary *878 or capricious when exercised honestly and upon due consideration, even though it may be believed an erroneous conclusion has been reached.” Toups, 10-1559, pp. 3-4, 60 So.3d at 1217; see also Palm-Air Civic Ass’n v. Syncor Int’l Corp., 97-1485, p. 7 (La.App. 4 Cir. 3/4/98), 709 So.2d 258, 262 (“[W]henever the propriety of a zoning decision is debatable, it will be upheld. Thus, doubts as to the reasonableness of the City’s action in issuing the permits at issue herein are to be resolved in favor of the defendant.”).
JjThe aggrieved party bears the burden of showing that the BZA decision is arbitrary, capricious, or manifestly erroneous in light of substantial evidence in the record. Esplanade Ridge, 13-1062, p. 8, 136 So.3d at 171; Cordes, 09-0976, pp. 67, 31 So.3d at 508-09. Absent this showing, the reviewing court may not substitute its own judgment for that of the BZA. Esplanade Ridge, 13-1062, p. 4, 136 So.3d at 169; King, 97-1873, pp. 14-15, 719 So.2d at 418; see also La. R.S. 49:964(G); Clark v. La. State Racing Com’n, 12-1049, pp. 10-11 (La.App. 4 Cir. 12/12/12), 104 So.3d 820, 827.
DISCUSSION
At issue in this appeal is whether the BZA rendered an arbitrary and capricious decision by upholding the determination by the Director of Safety and Permits that Antoine’s sufficiently established the existence of a legal nonconforming use.
The Director of Safety and Permits renders the initial decisions concerning the application and enforcement of the zoning ordinances and regulations within the CZO.[9] Any party aggrieved by “any decision of the Director of Safety and Permits concerning application and interpretation of the provisions of the [CZO] ” may appeal to the BZA. CZO § 14.5.1; La. R.S. 33:4727(C)(2)(a). Appeals shall be heard by the BZA for a determination of whether the Director’s decision | ^complies with the requirements and intent of the CZO. CZO § 14.4.1; La. R.S. 33:4727(C)(3)(a).
In its administration of the CZO, the BZA “may determine and vary” the application of zoning regulations “in harmony with their general purpose and intent.” La. R.S. 33:4727(A)(1). “In passing upon appeals, where there are practical difficulties” in “carrying out the strict letter of the ordinance,” the BZA shall have the power to “vary or modify the application” of any provisions of the CZO relating to the use of buildings, structures, or land “so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done.” La. R.S. 33:4727(C)(3)(c). The BZA may “reverse or affirm, wholly or partly, or may modify” the decision or determination appealed from and may make such decision “as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken.” La. R.S. 33:4727(D)(1).
In this case, the BZA decision upheld the decision of the Director of Safety and Permits, to issue a live entertainment permit to Antoine’s “pursuant to affidavits of nonconforming use.” Plaintiffs contend, however, that the affidavits submitted by Antoine’s, which were relied upon by the Director of Safety and Permits, and accepted by the BZA and the district court, are insufficient evidence to establish a legal nonconforming use in accordance with *879 the CZO. Plaintiffs further contend that the BZA and the district court failed to properly interpret the requirements of the CZO regarding nonconforming use; and, consequently, the BZA and the district court acted in an arbitrary, capricious manner, and manifestly | flerred by upholding the determination by the Director of Safety and Permits that Antoine’s had established the existence of a legal nonconforming use.
A nonconforming use is defined as “[a] use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area in which it is situated.” Redfearn v. Creppel, 455 So.2d 1356, 1358-59 (La. 1984). “The permitted continuance of a nonconforming use is designed to avoid the hardship, injustice, and doubtful constitutionality of compelling the immediate removal of objectionable buildings and uses already in the area.” Id.; see FQCPRQ v. Brandon Investments, L.L.C., 05-0793, pp. 1-2 (La.App. 4 Cir. 3/29/06), 930 So.2d 107, 109. However, nonconforming uses are inconsistent with the purpose of zoning ordinances to confine certain types of buildings and uses to certain areas; thus, decisions regarding nonconforming use should be viewed narrowly with all doubt resolved against continuation or expansion of the nonconformity. Cordes, 09-0976, p. 10, 31 So.3d at 511; Weisler v. Bd. of Zoning Adjustments, 98-3007 (La.App. 4 Cir. 11/17/99), 745 So.2d 1259, 1261; see CZO § 13.2.2.
A property owner who seeks to establish and retain a nonconforming use has the burden of producing evidence that the nonconforming use of the property has been continuous and consistent. “What constitutes sufficient usage to establish nonconforming status may vary with the facts of each ease,” but our jurisprudence holds that the nonconforming use must be continuous and not interrupted for a |inperiod in excess of six months. Weisler, 98-3007, 745 So.2d at 1263; see FQCPRQ, 05-0793, pp. 3-4, 930 So.2d at 110; Humphrey v. Robertson, 97-1742 (La.App. 4 Cir. 3/11/98), 709 So.2d 333, 338.
In addition, the CZO places the burden on the property owner to establish the existence and retention of a nonconforming use by clear and convincing evidence. CZO Article 13, § 13.2.1. “Such evidence shall include, but need not be necessarily restricted to, such documents, as rent receipts, affidavits, documentation of utility services, or other information as may be deemed necessary in a particular case.” CZO Article 13, § 13.7. At the time a permit or certificate of occupancy is filed, the property owner must produce acceptable evidence to the Director of Safety and Permits for an initial determination of the existence of the nonconforming use.
In this case, Antoine’s sought a permit for the existence of its nonconforming use of live entertainment and submitted fourteen affidavits from employees and members of the family owning Antoine’s. Each affidavit indicates the length of time the affiant has worked at and been “familiar with all facets of the operations of Antoine’s,” dating back to 1955; and each affiant attests that Antoine’s “has had live entertainment with no interruptions in excess of six months as part of the Antoine’s experience” during the entire period of the affiant’s tenure at Antoine’s. Antoine’s submitted these affidavits as evidence of the continuous, consistent use of live entertainment at the complex from 1955 to the present; and Inthe Director of Safety and Permits accepted the affidavits as sufficient evidence to establish the nonconforming use.
*880 Plaintiffs argue, however, that the Director erred in accepting Antoine’s affidavits as sufficient evidence to establish nonconforming use. Plaintiffs contend that both our jurisprudence and the CZO require more specific information about the regular, continuous use of live entertainment. Plaintiffs first cite the case of Humphrey v. Robertson, 97-1742 (La.App. 4 Cir. 3/11/98), 709 So.2d 333, in support of their argument.
In Humphrey, as in this case, neighbors appealed a BZA decision upholding the issuance of a live entertainment permit to a local bar granted by the Department. The issue before the Court was “whether the evidence establishes continuous live entertainment in the establishment in order to ascertain whether Little People’s Place occupies the status of a nonconforming use.” Humphrey, 709 So.2d at 338. Upon review of all the evidence submitted in that case, the Court found the affidavits submitted by the owners only established that “the conduct of live entertainment at the property was sporadic and intermittent at best” and, thus, did not establish a nonconforming use for live entertainment. Id. at 338. Plaintiffs in this case argue that Antoine’s affidavits similarly fail to provide sufficient information about the regular, continuous use of live entertainment to establish nonconforming use.
In Humphrey, however, the Court reviewed the evidence “without the benefit of the Board of Zoning Adjustments or trial judge’s conclusions” on the 112substantive issue of whether the bar owner’s established a nonconforming use. Humphrey, 709 So.2d at 338. “[T]he basis of the decision of the Department of Safety and Permits to allow live entertainment was based on a prescription question and the decision of the trial judge was based on res judiciata.” Id. Under those circumstances, the Court reviewed the facts and evidence without deference to the BZA, which had rendered an erroneous decision based on prescription[10] without consideration of whether the bar owner had produced sufficient evidence and testimony of the consistent, continuous use of live entertainment.
In the instant case, the BZA rendered its decision after a full hearing on the substantive issue of whether Antoine’s had established the legal nonconforming use of live entertainment with evidence attesting to such use. The BZA had the opportunity to review the evidence considered by the Director and take further evidence and testimony on this issue. The only evidence submitted, however, were Antoine’s affidavits attesting to the continuous nonconforming use. Both the Director and the BZA provided Plaintiffs the opportunity to submit evidence contrary to the affidavits submitted by Antoine’s. The Di *881 rector’s approval | ^specifically noted that the nonconforming status could be reconsidered pursuant to contrary evidence being submitted to the City. Notably, in Humphrey, the evidence included affidavits and testimony clearly indicating that the live entertainment at the club had not been consistent or continuous and without interruption for more than six months.[11] Whereas in this case, Plaintiffs did- not submit evidence contradicting the affidavits submitted by Antoine’s attesting to the continuous use of live entertainment.
Plaintiffs insist, however, that Antoine’s affidavits do not satisfy the property owner’s burden of establishing nonconforming use because the affidavits lack specificity regarding the frequency and duration of the nonconforming use. Plaintiffs contend that CZO requires a nonconforming use to be continuously operating for four hours a day, five days a week. CZO Article 13, § 13.6.1 provides,
The casual, intermittent, temporary, or illegal use of land or buildings shall not be sufficient to establish and maintain the existence of a nonconforming use. In order to provide for the continuation of a nonconforming use, it must be opened for business a minimum of four (4) hours per day, five (5) days per week. The hours of operation must be posted on the entrance to the use. Equipment or furnishings required by City ordinances for the specific type of activity must be available and the structure shall be maintained in accordance with applicable ordinances of the City. The existence of a nonconforming use on part of a lot or tract shall not be construed to establish a nonconforming use on the entire lot or tract,
| ^Plaintiffs first raised this argument of a threshold frequency and duration of nonconforming use at the BZA hearing. The BZA heard testimony from Ed Horan, the Zoning Administrator for the Department, who stated that CZO Article 13, § 13.6.1 is interpreted to mean “that the location must have that nonconforming use be operating [sic] for four hours a days, five days a week.” Mr. Horan did not state if specific evidence was required to be submitted to establish that frequency and duration, and he acknowledged that he was not familiar with the evidence submitted to establish the nonconforming use at that location. Mr. Horan stated that the Director, Paul May, reviewed and approved all permit applications; and in this case, the Director found that Antoine’s provided the evidence necessary to establish a nonconforming use.
Paul May did not testify at the BZA hearing, but Mr. May’s deposition testimony was admitted by the district court as additional evidence in its certiorari review of this matter.[12] Mr. May testified that the four hours a day, five days a week (4/5) standard was not in the original 1970 Code of Zoning Ordinances, but was developed later to provide some standard to apply to businesses applying for permits. Mr. May interpreted the 4/5 rule in terms of the use of the property to operate a business. In regards to Antoine’s, Mr. May testified that the 4/5 rule was satisfied by the fact that Antoine’s operates as a business upon that property for four hours a day, five days a week, and the nonconforming use for live entertainment has been regular *882 and continuous part of Antoine’s opera tions; but the h ¿nonconforming use itself does not need to continuously operate for four hours a day, five days a week.
Plaintiffs argue that Mr. May’s interpretation and application of the 4/5 rule is directly contradicted by this Court’s decision in Phillips’ Bar & Restaurant, Inc. v. City of New Orleans, 12-1396 (La.App. 4 Cir. 4/24/13), 116 So.3d 92. We disagree and find the Phillips’ decision inapplicable under the facts of this case.
At issue in Phillips’ was whether Phillips’ Bar had acquired a vested property right to use a separate, adjacent lot in connection with their existing legal nonconforming use at the original lot upon which the bar operated. Phillips Bar argued that the prescriptive period for the City to enforce zoning restrictions on its second lot had expired; and, therefore, it had acquired an expanded legal nonconforming use. The Court explained that “a legal non-conforming use can arise by virtue of the fact that a given use pre-existed the enactment of a current and otherwise applicable, zoning law. On the other hand, a legal non-conforming use can also arise by virtue of sustained governmental acquiescence.” Phillips’ Bar, 12-1396, p. 18, 116 So.2d at 104. Although Phillips Bar could not establish by the necessary evidence that a legal nonconforming use existed at the second, adjacent lot, the Court upheld the finding that a legal nonconforming use existed at the original location of Phillips Bar. As noted by this Court, the permitted continuation of nonconforming use is designed to protect those uses that were established prior to the enactment of more restrictive regulations. Phillips’ Bar, 12-1396, p. 13, 116 So.3d at 101, citing Redfearn, 455 So.2d at 1359.
hfiIn contrast to the cases cited by plaintiffs, the instant case does not involve the expansion or change of nonconforming use, and this case does not arise from an action by the City to enforce zoning regulations upon notice of a violation. In this case, plaintiffs seek to rescind the City’s recognition of the longstanding existence and continuation of a legal nonconforming use at Antoine’s. Plaintiffs, however, have failed to produce any evidence to contradict the evidence accepted by the City’s zoning authorities establishing the existence of a nonconforming use at Antoine’s.
Based upon our review of the record in light of the applicable CZO provisions, we cannot say that the BZA rendered an arbitrary, capricious or unreasonable decision in upholding the determination of the existence of a nonconforming use at Antoine’s. The evidence establishes that Antoine’s has been operating as a restaurant complex at its current location since prior to the original 1956 Code of Ordinances. The evidence further establishes that Antoine’s has offered live entertainment as a regular and continuous part of its operation of the restaurant complex since 1955, fifteen years prior to the adoption of the 1970 ordinance restricting live entertainment within the Vieux Carre zoning districts. On the basis of the evidence submitted, as required by the CZO, the Director made a determination that the existence of a nonconforming use had been sufficiently established. Under our jurisprudence and the applicable provisions of the CZO, we find no basis to conclude that either the Director’s initial determination, or the |1vBZA’s decision affirming that determination, was arbitrary, capricious, or manifestly erroneous.
CONCLUSION
For the foregoing reasons, we affirm the district court’s judgment and uphold the BZA’s decision.
AFFIRMED.

.Antoine’s property consists of a complex of buildings on several adjoining lots of record (513 and 519 Royal Street and 713, 719, 723 and 725 St. Louis Street) situated within VCC-2, Vieux Carre Commercial district. See CZO Article 8, §§ 8.5.1-8.5.5.

. Defendants in this appeal are the BZA and Antoine's, as defendant in intervention.

. All lots comprising the current Antoine’s complex were acquired by 1940; and all lots have been used as part of the restaurant complex, with the exception of 513 Royal Street, *876 That lot was originally used partially as a kitchen expansion and partially leased out for retail space. Following Hurricane Katrina, 513 Royal Street was converted into “Antoine’s Annex,” which now serves casual food fare from the Antoine’s kitchen.

. Paul May, the former Director of the Department, testified that many businesses in the City of New Orleans, particularly in the French Quarter, operate upon more than one lot of record under one occupational license and are considered by the City as valid complexes for purposes of permits and licensing.

. Antoine's also submitted renovation plans to the Vieux Carre Commission, which granted Antoine’s a permit, No. 080446, for certain renovations to 713-723 St. Louis St. on July 16, 2008.

. The City of New Orleans Code of Ordinances Chapter 30, Article III provides the guidelines for the issuance of Mayoralty Permits, which are issued for certain activities such as live entertainment.

. Mayoralty Permit No, 20240 was issued to Antoine’s Restaurant, L.L.C. to allow for "Orchestras In Businesses/No Admission Charged” at 713 St. Louis Street.

. Upon review of a ruling by the BZA, the district court may take additional evidence if deemed necessary for the proper disposition of the matter. La, R.S. 33:4727(E)(4); Cordes v. Bd of Zoning Adjustments, 09-0976, p. 7 (La.App. 4 Cir. 1/20/10), 31 So.3d 504, 509.

. The Director of Safety and Permits receives and reviews all applications for building permits and Certificates of Occupancy, determines whether applicants demonstrate compliance with the requirements of the CZO, issues all permits and certificates, and enforces continued compliance with the CZO. CZO§ 17.1-17.2.4; § 17.3.

. La. R.S. 9:5625 provides prescriptive periods governing actions for the enforcement of zoning provisions. In Humphrey, the applicable prescriptive period provided that the City had two years from first notice of the violation in which to bring an action for enforcement. The Director of the Department had found that the City had not brought an action to enforce a known violation within the two year prescriptive period; based on prescription, the Director granted the live entertainment permit. The BZA affirmed the Director’s determination on that basis, On appeal, this Court determined that the Director erred in determining that the prescriptive period had expired. The Court determined that prescription was interrupted by the filing of a reconventional demand for in-junctive relief, alleging a violation of the zoning restrictions by the several bar owners, within the two year period. Consequently, the Director and the BZA erred in granting and upholding the permit on the basis that the zoning provisions could not be enforced, Humphrey, 709 So.2d at 336-338. Neither the Director nor the BZA considered the issue of whether the bar owners had sufficiently established a nonconforming use through evidence of consistent, continuous use.

. The Court described the affidavits establishing that live entertainment had been provided on a sporadic and spontaneous basis from sometime in the 1960s until about 1992 when live entertainment was offered "as more of a regularly scheduled activity.” The opposing neighbors relied on affidavits and depositions testimony contesting the use of the club for live entertainment prior to 1991 or 1992.

. See infra n. 8.