Judge Daniel L. Dysart
11 This is an appeal by plaintiffs, Troy Dupuis and the Warehouse District Neighborhood Association (‘WDNA”), of a trial court judgment denying their Petition for Judicial Review of a City of New Orleans Board of Zoning Adjustments (“BZA”) ruling. For the reasons that follow, we affirm the trial court’s judgment.
FACTUAL AND PROCEDURAL BACKGROUND
Troy Dupuis and the WDNA (sometimes - collectively referred to as “plaintiffs”) filed this lawsuit following an April 11, 2016 decision of the. BZA granting a variance to Eskew Dumez Ripple Architects (“EDR Architects”) concerning the redevelopment *1048 of a vacant, 5-story building and adjacent parking lot located in the Warehouse District Local Historic District in New Orleans, Louisianá (the “Property”).[1] According to the lawsuit, EDR Architects sought the following variances in connection with their proposal to develop the site into a hotel:
⅛¾ - A waiver of the required minimum setback (so that there would be no setback);
- A waiver of 55 feet of the required height maximum of 125 feet (so that the maximum allowed would be 180 feet); and
- A waiver of the required maximum number of stories of 10 (to increase the number of stories to 16).[2]
It is only the second of these variances approved by the BZA to which the plaintiffs objected. Through this lawsuit, the plaintiffs sought to have the approval of this ruling declared null and void “because the decision of the BZA was arbitrary and capricious.”
A hearing was held on the plaintiffs’ request for a review of the BZA decision on September 16, 2016 and by judgment dated September 25, 2016, the trial court ruled in favor of the City of New Orleans, through the BZA, denying the Petition for Judicial Review, a decision noted by the trial court to be final.[3] Plaintiffs timely filed an appeal of this judgment and contend that the trial court erred in denying their Petition for Judicial Review on the basis that the BZA’s decision was arbitrary and capricious.

Standard of Review

At the outset, we note that the district courts have original jurisdiction to review a decision of an administrative body, such as the BZA. See, e.g., Lanaux v. City of New Orleans, Bd. of Zoning Adjustments, 489 So.2d 329, 331 (La. App. 4 Cir. 1986)(“the challenge to the grant of a zoning variance is an action invoking the original jurisdiction of the trial court”); Gertler v. City of New Orleans, 346 So.2d 228, 233 (La. App. 4 Cir. 1977); River Oaks-Hyman Pl. H. Civ. A. v. City of New Orleans, 281 So.2d 293 (La. App. 4 Cir., 1973)(“when a district court reviews a decision of an administrative body, it is exercising ‘exclusive original jurisdiction’ ”). Indeed, “[t]he purpose of certiorari review by the district court of decisions of boards and quasi-judicial tribunals is to ‘determine whether jurisdiction has been exceeded, or to decide if the evidence establishes a legal and substantial basis for the Board’s decision.’” Esplanade Ridge Civic Ass’n v. City of New Orleans, 13-1062, p. 3 (La. App. 4 Cir. 2/12/14), 136 So.3d 166, 169, quoting Elysian Fields, Inc. v. St. Martin, 600 So.2d 69, 72 (La. App. 4th Cir.1992); Cordes v. Bd. of Zoning Adjustments, 09-0976, p. 6 (La. App. 4 Cir. 1/20/10), 31 So.3d 504, 508; Daigle v. Jef *1049 ferson Par. Council, 09-440 p. 7 (La. App. 5 Cir. 5/25/10), 40 So.3d 1063, 1067.
The Courts of Appeal, then, have appellate jurisdiction with respect to the review of district court decisions concerning their review of decisions of zoning boards. See, River Oaks, 281 So.2d at 294-05. As the Supreme Court indicated, in King v. Caddo Par. Comm’n, 97-1873, pp. 14-15 (La. 10/20/98), 719 So.2d 410, 418, “[a] reviewing court does not consider whether the district court manifestly erred in its findings, but whether the zoning board acted arbitrarily, capriciously or with any calculated or prejudicial lack of discretion.”
This Court recently reiterated the role of the appellate court in reviewing a decision of a zoning board, first noting that, because “(zjoning laws and decisions fall within the legislative function of the state and local municipalities,” “the courts afford a presumption of validity to the decisions of zoning boards.” Vieux Carre Prop. Owners v. City of New Orleans, 14-0825, p. 6 (La. App. 4 Cir. 4/15/15), 216 So.3d 873, 877, writ denied sub nom., 15-1147 (La. 9/18/15), 178 So.3d 149 (Citations omitted). The Vieux Carre Court then explained:
[The] presumption [of validity] is rebut-table; and a party aggrieved by a decision of the BZA is entitled to judicial review through a writ of certiorari. Cordes [v. Bd. of Zoning Adjustments, 09-0976, p. 6 (La. App. 4 Cir. 1/20/10), 31 So.3d 504, 508]; see also La. R.S. 33:4727(E); La. R.S. 49:964. The purpose of certiorari review of the BZA decision is to determine whether the evidence establishes a legal and substantial basis for the decision or whether the BZA has exceeded its jurisdiction and acted in an arbitrary and capricious manner. Esplanade Ridge Civic Ass’n v. City of New Orleans, 13-1062, p. 3 (La. App. 4 Cir. 2/12/14), 136 So.3d 166, 169; Elysian Fields, Inc. v. St. Martin, 600 So.2d 69, 72 (La. App. 4th Cir.1992). “The test of whether a zoning board’s action is arbitrary and capricious is whether the action is reasonable under the circumstances.” Esplanade Ridge, 13-1062, p. 4, 136 So.3d at 169 quoting King v. Caddo Parish Com’n, 97-1873, p. 14 (La. 10/20/98), 719 So.2d 410, 418.

Id.

Our jurisprudence indicates that “the decisions of the BZA.. .are subject to judicial review only as to whether they are arbitrary, capricious or an abuse of discretion.” Antunez v. City of New Orleans Bd. of Zoning Adjustments, 15-0406, p. 2 (La. App. 4 Cir. 2/24/16), 187 So.3d 525, 526, quoting Ellsworth v. The City of New Orleans, 13-0084, pp. 6-7 (La. App. 4 Cir. 7/31/13), 120 So.3d 897, 902 (emphasis added). Thus, an appellate court “should not second guess the BZA or substitute its own judgment for that of the BZA.” Id. See also, City of Baton Rouge/Par. of E. Baton Rouge v. Myers, 13-2011, p. 6 (La. 5/7/14), 145 So.3d 320, 327-28 (“[i]t is only when an action of a zoning commission is found on judicial review to be palpably unreasonable, arbitrary, an abuse of discretion, or an unreasonable exercise of police power that such action will be disturbed”). | ^Moreover, “[w]hen there is room for two opinions, an action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed an erroneous conclusion has been reached.” Vieux Carre Prop. Owners v. City of New Orleans, 14-0825, p. 7, 216 So.3d 873 at 877-78 (quoting Toups v. City of Shreveport, 10-1559, pp. 3-4 (La. 3/15/11), 60 So.3d 1215, 1217.
In determining whether a zoning commission’s action is arbitrary, capricious, palpably unreasonable or an abuse of discretion, we note that “[t]he terms ‘arbitrary and capricious’ mean willful and unreasoning action, absent consideration *1050 and in disregard of the facts and circumstances of the case.” Mannino’s P & M Texaco Serv. Ctr., Inc. v. City of New Orleans, 15-0109, p. 3 (La. App. 4 Cir. 8/19/15), 173 So.3d 1186, 1188, quoting Toups v. City of Shreveport, 10-1559, p. 3 (La. 3/15/11), 60 So.3d 1215, 1217. Likewise, “when there is room for two opinions, an action is not arbitrary or capricious when exercised honestly and upon due consideration, even'though it may be believed an erroneous conclusion has been reached.” Id. quoting Toups, 10-1559, pp. 3-4, 60 So.3d at 1217.
On appeal, “[t]he aggrieved party bears the burden of showing that the BZA-decisión is arbitrary,'capricious, or manifestly erroneous in light of substantial evidence to the record.” Vieux Carre Prop. Owners, 14-0825, p. 7, 216 So.3d at 877.
DISCUSSION
The CZO expressly provides for the allowance of variances “to afford an applicant relief from the requirements of the letter of this Ordinance when unnecessary hardship or practical difficulty 'exists.” CZO, Art. 4.6.A. Under Art. 4.6.F of the CZO, the BZA is to consider the following nine factors in determining whether to grant a variance:
1. Special conditions and circumstances exist which are peculiar to the land, structure, or building involved and’ which are not applicable to other lands, structures, or buildings in- the same zoning district.
2. Literal interpretation of the provi- ' sions of this Ordinance would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of this Ordinance.
3. The special conditions and circumstances do not result from the actions of the applicant or any other person who may have or had interest to the property,
4.. Granting the variance requested will not confer on the applicant any special privilege which is denied by this Ordinance to other lands, structures, or buildings in the same district or 'similarly situated.
’5. The variance, if. granted, will’hot alter the essential character of the locality.
6. Strict adherence to the regulation for the property would result in a ., demonstrable hardship upon the owner, as distinguished from mere inconvenience.
7. The purpose of the variance is not based exclusively upon a desire to serve the convenience or. profit of the property owner or other interested party(s).
8. The granting of the variance will not be detrimental to the public welfare or injurious to other property or improvements to the neighborhood in which the property is located.
9. The proposed variance will not impair an adequate supply of light and air to adjacent property, or increase substantially the congestion in the public street, or increase the danger of fire, or endanger the public safety.
See also O’Brien v. Bd. of Zoning Adjustments for City of New Orleans, 15-0169, pp. 4-5 (La. App. 4 Cir. 10/7/15), 177 So.3d 738, 740-41.
|7As this Court noted to Antunez, these nine criteria are to be analyzed by the BZA in determining whether to grant or deny a variance. Id., 15-0406, p. 3, 187 So.3d at 526. The BZA then conducts a hearing on the variance, prior to which “the BZA staff composes a report that discusses each of the nine criteria and *1051 provides a recommendation.” Id., p. 3, 187 So.3d at 527.
In the instant matter, the BZA staff found that the waiver sought by the EDR Architects (regarding the maximum building height) failed to meet five of the factors for a variance; namely, factors numbered 2, 3, 5, 6, and 7. On that basis, the BZA staff recommended that the BZA deny the request for .a variance of the maximum building height. The BZA issued its disposition of the case after the public hearing on April 11, 2016, approving the variance, finding that the factors had, in fact, been met.[4] Its disposition states:
... [T]he Board c'arefully considered the facts and arguments for and against the application at the public hearing, and after considering • the Comprehensive Zoning Ordinance.., the Board is of the opinion that the weight of the evidence indicates that the Approval Standards for variances of Article 4, Section 4.6.F of the Comprehensive Zoning Ordinance, have been met and therefore, a motion was made by Todd James and seconded by Ramiro Diaz, for APPROVAL of the requested variances, subject to [certain enumerated] provisos[.] (Emphasis in the original).
On appeal, the plaintiffs maintain that the BZA approved the request for a waiver “without significant exploration or discussion of the Staffs report... or performing axi investigation and/or analysis itself, [and] merely rubberstamped [the EDR Architects’] application;” Their argument largely focuses on the BZA’s |«alleged failure to consider and address the issues raised by the BZA staff report. They contend that because the BZA staff is employed “to perform the analysis and make a recommendation” as to a variance, “[the] failure to [go with the Staff recommendation] in the absence of some detailed invés-tigative and analytical narrative disputing the Staff recommendation, would appear to be arbitrary and capricious conduct.” They argue that, in such a case, the decision “would not be based on due consideration, but rather some gut instinct or other unknown basis.” The plaintiffs then go through the BZA staff report and discuss each of the' findings of the BZA staff concerning those -factors which it found were lacking.
The plaintiffs recognize, however, that the BZA’s staff report is “preliminary in nature and essentially does little more than to summarize the issue for the Board.” Id., 15-0406,p. 3, 187 So.3d at 527, quoting McPherson v. City of New Orleans Board of Zoning Adjustments, 04-1129 (La. App. 4 Cir. 5/11/05), 902 So.2d 573 (uhpub.). Indeed,' the BZA staff recommendation is only oné consideration the BZA is to use when making its decision. Id. Other considerations can include “public opinion... voiced by neighbors.” Ellsworth v. City of New Orleans, 13-0084, p. 9 (La. App. 4 Cir. 7/31/13), 120 So.3d 897, 903. The court may also “take additional testimony or receive additional evidence as part of its consideration of ... an appeal from the board of adjustment.” Esplanade Ridge Civic Ass’n v. City of New Orleans, 13-1062, pp. 4-5 (La. App. 4 Cir. 2/12/14), 136 So.3d 166, 169.
Our review of the record of this case demonstrates that the BZA’s ruling was adequately based upon evidence before the BZA and we cannot say that the ruling was either arbitrary or capricious.
laThe evidence in this matter reveals that EDR Architects considered several options for the development of the Property and, as it indicated by its March 7, 2016 correspondence to the BZA, the variance it *1052 sought is designed to “alleviate hardships and special circumstances peculiar to the subject property, to comply with the demands of multiple regulatory agencies and to provide an appropriate design at the border of an historic neighborhood and the convention center district.” As such, EDR Architects noted, the selected development plan “shifts the height and bulk of the building away from the historic core of the neighborhood and grants no additional square footage to the development.”
EDR Architects submitted numerous documents in response to the plaintiffs’ Petition for Writ of Certiorari and in support of their request for a variance, including:
- A February 26, 2016 letter from the New Orleans Historic Landmarks Commission and Central Business District Historic District Landmarks Commission confirming “the actions of the Architectural Review Committee (ARC) of the Central Business Historic District Landmarks Commission,” which noted “that the BZA requirements are inconsistent with the predominate development plan of the historic district and they would be in support of the waivers required for the setback. The compositional strategy of the three building stepping up from the historic warehouse is successful and should be further developed; the ARC would support additional height to the middle building.” (Emphasis added).
- A March 4, 2016 Project NPP Report which “provides a summary of contacts with citizens, neighbors, public agencies, and interested parties.” It notes that two meetings were held “where citizens were invited to discuss the applicant’s proposal,” and several other meetings were held, including one with a council member, another with a representative of the Downtown Development District (“DDD”), and third with a representative of the Convention Center, Additionally, invitations were sent to the WDNA meeting at which the project was introduced. Furthermore, postcards were sent to addresses within a 600 foot radius of the Property site. While numerous concerns were raised (e.g., drop-off for the hotel, desire for public access to amenities within the hotel, desire for “green space”), no mention is made of the building height.
Im - An April 1, 2016 email from Troy Dupuis stating that the WDNA “only met once with the developer” and that the WDNA “specifically stated that 184 ft[.] should not be requested.”[5]
- An April 01, 2016 email to Mr. Du-puis, indicating that a second meeting had been held and that “the majority of attendees voiced support for [the] proposed design and... requested height variance.” It likewise again noted that the proposed project stemmed from “a shared désire to respect the scale of the historic warehouse district by shifting the bulk on the site towards the Convention Center Boulevard and highway overpass,” thereby “not increasing the density on the site.. .[which] remains consistent with that which is permitted by the underlying zoning.”
*1053 - An April 1, 2016 letter to the BZA from Wayne Ducote, “a developer and hotel business owner in the New Orleans area,” who “participated in the planning effort with the [DDD] for the Lafayette Square/Upper CBD Height Study.” Among the conclusions of the study was “that height in the CBD should be focused on the perimeter of the neighborhood, creating a ‘bowl’ effect.” Mr. Ducote noted that the Property “is on the perimeter of the upper CBD neighborhood” and thus, the “request for height on the edge of the CBD keeps within the spirit of its conclusions.” He further noted that “the site is adjacent to the Pontchartrain Expressway and therefore will remain the perimeter of the upper CBD neighborhood.
- Letters or emails in support of the project from Clayton Randle and David Hecht of ABRI Design & Development, the developer of the site; Murat Gundogdu, the owner of a nearby business, Magazine Pizza; Bob Johnson, the General Manager of the New Orleans Ernest N. Morial Convention Center’ and Karen Sep-ko, a warehouse district resident and former owner of a condo in a building directly adjacent to the Property.
At the April 11, 2016 hearing, the BZA heard from numerous persons about the request for variance.[6] All, with the exception of Troy Dupuis, spoke in favor of the variance. After considering the matter, the BZA concluded that all nine factors were present, including those which the BZA staff had concluded had not been lnmet. We have reviewed the record and find that the BZA decision was neither arbitrary or capricious nor an abuse of discretion
As concerns factor number 2, it was argued that the literal interpretation of the ordinance would deprive EDR Architects of rights commonly enjoyed by other properties in the same district. That is, EDR Architects sought to build a building of a certain size, as permitted by the ordinance—a right enjoyed by other neighboring properties. However, because of concerns raised by various entities about the preservation of the historical district (which sought restrictions on the height of the building to be constructed adjacent to the historic warehouse), EDR Architects designed the project so as to shift the mass of the building away from the historic district and towards the convention center area. Thus, without the allowance, EDR Architects would not be able to create a building of the maximum size allowed by the ordinance and, as Mr. Hecht noted, still be able to receive benefits enjoyed by other properties, such as historic tax credits, access to light and air or HDLC (Historic District Landmarks Commission) approval.
Thus, in denying the height variance, EDR Architects would be deprived of the rights enjoyed by others insofar as it would be unable to construct a building at the maximum size permitted by the ordinance without losing benefits enjoyed by others, such as historic tax credits and access to light and air. On this basis, we find no error in the BZA’s determination that criterion number 2 had been met.
We likewise find no error in the BZA’s finding that factor number 3 was met. That criterion looks to whether “[t]he spe *1054 cial conditions and circumstances ... resulted-] from the actions of the applicant or any other person who may have l^or had interest in the property.” The record clearly demonstrates that the site for the project is entirely unique and presented “special conditions and circumstances” over which EDR Architects had no control or involvement. As Mr. Dumez and Mr. Halpern both indicated at the BZA hearing, the site is particularly difficult to develop, given its location near the outer edge of the warehouse district and its close proximity to the convention center and the elevated expressway (factors which were acknowledged by the BZA staff). EDR Architects played no role in any of these factors and in no way contributed to the special conditions and circumstances lead? ing to its request for a variance. Likewise, if EDR Architects were not allowed the variance and built a building at the maximum size allowed by ordinance, it would impact the historic warehouse, and the historic tax credits would be lost. This scenario, too, exists independent of any action on EDR Architects’ part.
Next we consider factor number 5, which considers whether the variance “if granted, will ,.. alter the essential character of the locality.” Despite the finding of the BZA staff, the BZA ultimately concluded that this factor was met as well. The design of the proposed project shifts the bulk.of the building away from the historic area and moves it towards the convention center. As Mr. Dumez noted at the BZA hearing,.the height of the building is consistent with the City of New Orleans’ master plan and the intent of a height study performed by the DDD, which intend for buildings of increased height to be located on the perimeter of the district. Mr. Sherman too, indicated at the BZA hearing that, in the opinion of the HDLC’s architectural review committee, the increase on the building’s height would not alter the essential character of the area. Similarly, Mr. Harris, appearing on behalf of Mr. Ducote, stated that Mr. Du-cote had been a participant in the CBD | ^height study, and in Mr. Ducote’s opinion, the height variance is within the spirit of the study. Several others who spoke at the BZA hearing indicated their dpinions that the height variance would not be injurious to adjacent properties.
Our review of the record reflects no error in the BZA’s conclusion that factor number 5 is met.
Factor number 6, which focuses on whether the strict adherence to the regulation “would result in a demonstrable hardship upon the owner, as distinguished from mere inconvenience,” has similar considerations as those contained in factor number 2. As noted herein, a strict adherence to the height restriction in the ordinance would result in one of two circumstances— one, by disallowing the variance, in order to construct a building of the maximum allowable size, certain benefits would be lost, such as tax credits; or two, in- order to maintain all benefits, the building would have to be downsized and the maximum allowable building size could not be achieved. We view this to be a “demonstrable hardship” rather than a “mere inconvenience” and we note that this hardship was not created by any action on the part of EDR Architects.;We thus find no error in the conclusion that factor number 6 is met. - .
Finally, as concerns factor number 7, the record clearly demonstrates that the purpose of the' variance is not driven by convenience or the pursuit of greater profit by the property owner. The record is replete with information indicating that the project’s size would not be increased by the grant of the variance.'To the contrary, the variance would merely shift the bulk of the building away from the historic site; the size of the building is within the *1055 parameters of the CZO. Accordingly, it cannot be said that the motivation for seeking the variance was either convenience or greater profit.
1 uOnly Mr. Dupuis spoke at the BZA hearing against the height restriction. He commented that there are no buildings'of equal height in the area and opined that the HDLC should not weigh in on building heights.[7] He also commented that, in his opinion, the allowance of a variance would have an impact op other properties; for example, he noted that owners of empty lots may. seek similar waivers. However, as noted by numerous supporters of the variance, it was sought because of the unique nature of the Property. As Mr. Sherman noted in rebuttal to Mr. Dupuis’ statements, a variance would not create any precedent for other developments, simply because there are no identifiable tracts of land posing the same development issues; namely, that the site is at the edge of the CDB, in close proximity to the elevated expressway and across the street from the convention center.
Based on the record before us, we find that the plaintiffs failed to meet their burden on appeal by showing that the BZA decision in this matter is arbitrary, capricious, or manifestly erroneous in light of substantial evidence in the record. We find no evidence that the BZA abused its discretion in granting the variance at issue, and we find no basis for -reversing the judgment of the trial court which upheld the decision of the- BZA.
CONCLUSION
For the reasons set forth hérein, we affirm the trial court’s judgment denying |1flthe plaintiffs’ Petition for Judicial Review.
AFFIRMED

. The Warehouse District Local Historic District was designated in 1978 and expanded in 1985 and 2007. It is bounded by Magazine Street, Lafayette/Constance Streets, Poydras Street, Convention Center Boulevard, and the Expressway.

See

https://www.nola.gov/nola/media/HDLC/ Historic% 20Districts/Warehouse.pdf.

. The New Orleans Comprehensive Zoning Ordinance ("CZO”) provides in Article 17.4.A.2 that the maximum height of buildings located within the area designated as Section H (on Figure 17-2), the location of the site in dispute here, is 125 feet.

. The trial court’s judgment notes that the petition was denied “for the reasons stated orally at the hearing;” however, the record before us does not contain a transcript of the hearing because the court reporter's equipment malfunctioned on the date of the hearing. Accordingly, the trial court's reasons for judgment are unknown.

. At the April 11, 2016 hearing, a motion was made to accept the requested variance, on a finding that the nine criteria were met. The variance as unanimously approved..

. The WDNA’s name is listed under Mr. Du-puis' name on the email; however, there is no indication of his capacity to speak on behalf of the WDNA. Nor does the Petition in this case give any information as to Mr. Dupuis' relationship with the WDNA, It merely states that Mr. Dupuis is "a person of full age and majority domiciled in the Parish of Orleans, State of Louisiana.”

. Those persons included David Hecht, Steve Dumez (a principal and the design director of EDR Architects), Mike Sherman (land use counsel for the project), Jason Richards (an EDR Architect), Madeline O'Neal (on behalf of the Convention Center), Mason Harris (on behalf of Wayne Ducote), Edward Halpern (whose family had once owned the site), an attorney who works in the Central Business District, and an urban planner.

. We note, as did the BZA, that a project to . construct a 24-story building -in the area has been approved. See Rubenstein v. City of New Orleans, 07-1211 (La. App. 4 Cir. 4/30/08), 982 So.2d 964, writ denied, 08-1437 (La. 10/3/08), 982 So.2d 1015, That building is located less than a mile from the Property at issue (albeit within a different district) and a height variance was granted for the construction of this building by the New Orleans City Council.