| | | |
|---|---|---|
| **LAKE TERRACE PROPERTY OWNERS ASSOCIATION, INC.** | * | **NO. 2024-CA-0577** |
| | * | |
| **VERSUS** | | **COURT OF APPEAL** |
| | * | |
| **THE CITY OF NEW ORLEANS, BOARD OF ZONING ADJUSTMENTS AND CELSO ERIC HERNANDEZ** | * | **FOURTH CIRCUIT** |
| | * | **STATE OF LOUISIANA** |
| | * * * * * * * | |

**CONSOLIDATED WITH:**                    **CONSOLIDATED WITH:**

**LAKE TERRACE PROPERTY**                    **NO. 2024-CA-0758**
**OWNERS ASSOCIATION, INC.**

**VERSUS**

**THE CITY OF NEW ORLEANS,**
**BOARD OF ZONING**
**ADJUSTMENTS AND CELSO**
**ERIC HERNANDEZ**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2023-05362, DIVISION "C"
Honorable Sidney H. Cates, Judge
* * * * * *
**Judge Nakisha Ervin-Knott**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Nakisha Ervin-Knott, Judge Monique G. Morial)

Keith A. Doley
ATTORNEY AT LAW
1554 North Broad Street
New Orleans, LA 70119


COUNSEL FOR PLAINTIFF/APPELLEE


Shawn Lindsay
DEPUTY CITY ATTORNEY
Donesia D. Turner
CITY ATTORNEY
CITY OF NEW ORLEANS
1300 Perdido Street Suite 5E03
New Orleans, LA 70112
Robert J. Ellis, Jr.

Salvador I. Bivalacqua
Will C. Griffin
GRIFFIN & BIVALACQUA, LLC
650 Poydras Street, Suite 2615
New Orleans, LA 70130

COUNSEL FOR DEFENDANTS/APPELLANTS

**MOTION TO DISMISS APPEAL DISMISSED; APPEALS CONVERTED TO WRITS; WRITS GRANTED; AFFIRMED IN PART, REVERSED IN PART; JUDGMENT RENDERED.**

**FEBRUARY 18, 2025**

NEK
DLD
MGM

Appellants, the City of New Orleans ("the City") and Celso Eric Hernandez ("Mr. Hernandez"), seek review of the district court's May 30, 2024 judgment, which held the Board of Zoning Adjustments ("BZA")'s denial of Lake Terrace Property Owners Association, Inc.[1] ("LTPOA")'s appeal was "arbitrary, unreasonable, and an abuse of discretion." The district court vacated the BZA's May 1, 2023 decision and May 11, 2023 disposition denying LTPOA's appeal of the January 31, 2023 zoning verification and remanded this matter to the BZA "for a full evidentiary hearing and vote by the entire Board." For the reasons that follow, we dismiss LTPOA's motion to dismiss for lack of jurisdiction; convert the June 18, 2024 motion for suspensive appeal and June 28, 2024 motion for devolutive appeal

---

[1] According to LTPOA's petition for writ of certiorari and/or judicial review, "LTPOA is a non-profit corporation organized under Louisiana law and is domiciled and maintains its principal place of business in the Parish of Orleans, State of Louisiana." LTPOA's membership is "comprised of owners of residential property within the Lake Terrace Subdivision (bounded by Allen Toussaint Boulevard, London Park, Lake Pontchartrain, and Bayou St. John)." The petition further provides, in pertinent part:

> Among the purposes of LTPOA set forth its Articles of Incorporation are to promote, cultivate, and develop a spirit of cooperation and mutuality among its members in the Lake Terrace Subdivision; to maintain and strictly enforce restrictions applicable to the Subdivision; to promote and encourage high standards of residential development and maintenance, and to discourage any offensive or obnoxious activity or misuse of property within the Subdivision.

1

to applications for supervisory writs; grant the writs; affirm in part the district court's ruling that the BZA's denial of LTPOA's appeal was "arbitrary, unreasonable, and an abuse of discretion"; reverse in part the district court's remand of the matter to the BZA "for a full evidentiary hearing and vote by the entire Board"; and render judgment granting LTPOA's appeal of the BZA's May 1, 2023 decision and May 11, 2023 disposition.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Hernandez is the owner of residential property located at 6419 Caldwell Drive ("the Property") in New Orleans, Louisiana. He purchased said Property on February 25, 2022, from Stephen Covington Guilbault ("Mr. S. Guilbault") and George G. Guilbault, Jr. Prior to Mr. Hernandez's purchase, the Property was originally owned by Ms. Palma Covington Guilbault ("Ms. Covington") from December 11, 1980 until her death in 2020.[2] The Property is located in the Lake Terrace Subdivision, a residential district that is zoned SR-S Single-Family Residential District, under the City of New Orleans Comprehensive Zoning Ordinance ("CZO"), and consists of a principal building and second rear structure that was originally built as a pool cabana.

After purchasing the Property, Mr. Hernandez began renovation work on the principal building and rear structure. As part of the renovation work on the Property, Mr. Hernandez applied for a renovation permit – Building Permit No. 22-07631-RNVN – to the City of New Orleans, Department of Safety and Permits ("the Department"), which specifically referenced remodeling the kitchen area in the rear

---

[2] According to the Act of Cash Sale dated February 25, 2022, the property was originally "acquired by Palma Covington Guilbault, wife of/and George G. Guilbault…by Credit Sale dated December 11, 1980" and "[f]urther acquired by Palma Covington from George G. Guilbault by Act of Partition and Settlement of Community dated February 16, 1983…."

structure. The Department had questions concerning the longevity and existence of the rear structure as a second dwelling unit and requested documentation – such as affidavits, utility accounts, floorplans, leases, and photographs – in order to determine whether there was a documented legal history for an Established Two-Family Dwelling under CZO Sec. 20.3.W. The Department also stated that the zoning division would have to issue an official zoning verification prior to issuing a permit.

The Department considered the following documents submitted by Mr. Hernandez and internal research including but not limited to the following: (1) a notarized letter from former property owner, Mr. S. Guilbault, attesting that the rear structure was completed in the 1980's; (2) photographs of the exterior architectural design and elements of the rear structure which were the same era as those of the main house (bricks and windows); (3) Google imagery that revealed the rear structure had been in existence since images had been recorded in 2004; (4) Orleans Parish Tax Assessor's records which described the rear structure as a cabana and included graphic square footage/building footprint representations; (5) interior photographs of the rear structure that showed a bathroom with tilework that appeared decades old, kitchen, laundry room, bedroom, and living space; and (6) a construction estimate provided as part of the initial renovation permit, with specific reference to remodeling the kitchen in the rear structure.

On January 31, 2023, the Director of the Department determined the rear structure was used as a separate dwelling unit for over five years and had attained status as a permitted use as a two-unit Established Two-Family Dwelling in accordance with CZO Sec. 20.3.W.1. The Department issued Building Permit No.

3

22-07631-RNVN on February 15, 2023, which allowed renovation of the Property, including a new kitchen in the rear structure to be used as a dwelling unit.

A month after the Department issued the building permit, the president of LTPOA, on behalf of LTPOA, appealed the Director's decision to the BZA, which was assigned BZA Docket No. 041-23. LTPOA asserted the Director's decision was erroneous because there was no evidence the rear structure was used as a two-family residence. In the alternative, LTPOA asserted that if the rear structure could be considered a two-family dwelling under the CZO's provisions regarding established non-conforming use, that use was abandoned under CZO Sec. 25.3.C.1 because the rear structure has remained vacant more than 180 days.

Several neighbors submitted letters in support of LTPOA's appeal arguing the Property was subject to the building restrictions in the Lake Terrace Subdivision, which mandated all lots be devoted to single family dwellings. These neighbors made additional arguments, which included: (1) cabana kitchens are not allowed and if there was a kitchen, it was illegal; (2) the rear structure was never rented or leased; and (3) no one resided in the rear structure. However, LTPOA and neighbors conceded that the former owner, Ms. Covington, convalesced in the pool cabana when she became ill and could no longer go up the stairs in the main house. The former owner, Mr. S. Guilbault, signed an affidavit on April 21, 2023, attesting that the Property was always a single family residence; the pool cabana was never rented or leased; and his mother, Ms. Covington, convalesced and spent her final days in the pool cabana due to her illness.

The following occurred at the BZA's May 1, 2023 public hearing:

> And Whereas, the Board carefully considered the facts and arguments for and against the application at the public hearing, and after considering the Comprehensive Zoning Ordinance, No. 4264 M.C.S.,

4

as amended, the Board is of the opinion that the weight of the evidence does not indicate an error in application of the law or a conflict in the law, in accordance with **Article 4, Section 4.8.A** of the Comprehensive Zoning Ordinance; therefore, a motion was made by **Todd James** to **DENY** the appeal and **UPHOLD** the decision made by the Director of the Department of Safety and Permits.

The motion died for lack of a second.

And Whereas, the Board carefully considered the facts and arguments for and against the application at the public hearing, and after considering the Comprehensive Zoning Ordinance, No. 4264 M.C.S., as amended, the Board is of the opinion that the weight of the evidence indicates an error in application of the law or a conflict in the law, in accordance with **Article 4, Section 4.8.A** of the Comprehensive Zoning Ordinance; therefore, a substitute motion was made by **Matt Rufo** and seconded by **Ramiro Diaz** to **APPROVE** the appeal and **OVERTURN** the decision made by the Director of the Department of Safety and Permits.

**Voting for the Resolution:** Tamara Agins, Jaime Ramiro Diaz, Matthew Rufo
**Voting Against the Resolution:** Candice Forest, Todd James
**Abstaining from the Resolution:** None
**Absent:** Jose Alvarez, Alfonso Gonzalez

The concurring vote of four (4) members of the Board shall be necessary to reverse any order, requirement, decision or determination of the Director of Safety and Permits. The motion failed to obtain the concurring vote of four (4) members of the Board and did not pass.

And Whereas, the Board carefully considered the facts and arguments for and against the application at the public hearing, and after considering the Comprehensive Zoning Ordinance, No. 4264 M.C.S., as amended, a substitute motion was made by **Ramiro Diaz** and seconded by **Tamara Agins** to **DEFER** the appeal for 30 days.

**Voting for the Resolution:** Tamara Agins, Jaime Ramiro Diaz, Matthew Rufo
**Voting Against the Resolution:** Candice Forest, Todd James
**Abstaining from the Resolution:** None
**Absent:** Jose Alvarez, Alfonso Gonzalez

The concurring vote of four (4) members of the Board shall be necessary to reverse any order, requirement, decision or determination of the Director of Safety and Permits. The motion failed to obtain the concurring vote of four (4) members of the Board and did not pass.

> As there was no motion properly passed to overturn the decision of the Director of Safety and Permits, by operation governing procedures, the appeal is **DENIED.**

The BZA's decision was filed on May 11, 2023, in BZA Docket No. 041-23.

Thereafter, on June 9, 2023, LTPOA filed a petition for writ of certiorari and/or judicial review of the Board's decision in Orleans Parish Civil District Court. The district court heard LTPOA's petition for judicial review on March 22, 2024. By judgment dated May 30, 2024, the district court vacated the BZA's May 1, 2023 decision and May 11, 2023 disposition denying LTPOA's appeal of the January 31, 2023 zoning verification and remanded this matter to the BZA "for a full evidentiary hearing and vote by the entire Board." The district court held the BZA's denial of LTPOA's appeal was "arbitrary, unreasonable, and an abuse of discretion."

The City filed a motion for suspensive appeal on June 18, 2024, and an order granting the appeal was signed on June 21, 2024. Additionally, Mr. Hernandez filed a motion for devolutive appeal on June 28, 2024, and an order granting the appeal was signed on July 1, 2024. This appeal followed.[3]

### JURISDICTION

*Motion to Dismiss Appeal*

LTPOA filed a motion to dismiss appeal specific to Mr. Hernandez's appeal asserting that his appeal is untimely for failure to timely pay the costs of the appeal. LTPOA acknowledged that Mr. Hernandez timely filed his motion for devolutive appeal on June 28,2024. However, the costs associated with his appeal were not paid

---

[3] On December 19, 2024, this Court issued an order consolidating Case Nos. 2024-CA-0577 and 2024-CA-0758. According to Mr. Hernandez's motion to consolidate, filed in Case No. 2024-CA-0758, his timely filed appeal was not included in the Case No. 2024-CA-0577 record due to an invoicing issue with the Clerk of Court's Office for Orleans Parish Civil District Court. When this issue was corrected and the record was lodged on his behalf, Mr. Hernandez's appeal was assigned a new case number, 2024-CA-0758. Case Nos. 2024-CA-0577 and 2024-CA-0758 involve the same parties and stem from the same May 30, 2024 district court judgment.

in full until nearly four months later on October 25, 2024, causing unnecessary delay and excessive extension of the time period within which to lodge the record and file briefing before this Court.

According to La. C.C.P. art. 2088 A(9), while the district court is divested of jurisdiction over all matters reviewable under the appeal once an order for appeal is granted, the trial court retains jurisdiction over certain matters, including the imposition of penalties provided by La. C.C.P. art. 2126, or dismissal of an appeal, "when the appellant fails to timely pay the estimated costs or the difference between the estimated costs and the actual costs of the appeal." As LTPOA is seeking a dismissal of Mr. Hernandez's appeal based on his alleged failure to timely pay the appeals costs under La. C.C.P. art. 2126, this Court lacks jurisdiction over LTPOA's motion to dismiss appeal. Therefore, LTPOA's motion to dismiss appeal is dismissed for lack of jurisdiction.

### *May 30, 2024 Judgment*

"This Court may not determine the merits of an appeal unless its jurisdiction is properly invoked by a final judgment." *Louisiana-Annunciation Condo. Assoc., Inc. v. Kennedy*, 2023-0327, p. 9 (La. App. 4 Cir. 11/16/23), 377 So.3d 804, 811 (citation omitted). Therefore, we must determine whether the district court's judgment is properly before us on appeal.

"This court's appellate jurisdiction extends to final judgments." *Id.* (citation omitted). Appellants seek to appeal the May 30, 2024 judgment, which vacated the BZA's decision to deny LTPOA's appeal and remanded the case back to the BZA for a full evidentiary hearing and vote by the entire Board. In *3000-3032 St. Claude Ave., LLC v. City of New Orleans*, the plaintiff filed a petition for judicial review of a zoning decision in the district court. 2021-0139, p. 4 (La. App. 4 Cir. 12/9/21), 332

7

So.3d 1251, 1254. After conducting a hearing and taking the matter under advisement, the district court remanded the matter to the City Council "for further review and clarity as relates to the basis for their decision." *Id.* The City filed a motion for suspensive appeal of the district court's judgment. *Id.* After the appeal was lodged in this Court, we determined the appealed judgment was not a final judgment and converted the appeal into an application for supervisory writs. *Id.* at p. 5, 332 So.3d at 1254.

The judgment in *3000-3032 St. Claude Ave., LLC* is similar to the judgment in the matter herein, as both appealed judgments relate to zoning decisions that the district court remanded to the respective administrative bodies. Just as this Court determined the judgment in *3000-3032 St. Claude Ave., LLC* was not a final judgment, we find the district court's May 30, 2024 judgment is not a final judgment.

"An appeal erroneously taken on a nonappealable judgment may be converted to an application for supervisory writ by the appellate court, but only when the motion for appeal has been filed within the thirty-day period allowed for the filing of an application for supervisory writ under Rule 4-3 of the Uniform Rules-Courts of Appeal." *Louisiana-Annunciation Condo. Assoc., Inc.*, 2023-0327, p. 10, 377 So.3d at 812. In this case, the City filed a motion for suspensive appeal on June 18, 2024, and an order granting the appeal was signed on June 21, 2024. Additionally, Mr. Hernandez filed a motion for devolutive appeal on June 28, 2024, and an order granting the appeal was signed on July 1, 2024. Both the City and Mr. Hernandez demonstrated their intent to seek review within thirty days of the district court's May 30, 2024 judgment. Accordingly, we exercise our discretion and convert the June 18, 2024 and June 28, 2024 appeals to applications for supervisory writs.

## STANDARD OF REVIEW

This Court has previously explained the applicable appellate standard of review regarding BZA decisions as follows:

> District courts have original jurisdiction to review decisions of an administrative body, such as the BZA. *Dupuis v. City of New Orleans through Zoning Bd. of Zoning Adjustments*, 2017-0052, p. 2 (La. App. 4 Cir. 8/2/17), 224 So.3d 1046, 1048. *See also, e.g.*, *Gertler v. City of New Orleans*, 346 So.2d 228, 233 (La. App. 4 Cir. 1977); *River Oaks– Hyman Pl. H. Civ. A. v. City of New Orleans*, 281 So.2d 293 (La. App. 4 Cir., 1973)("when a district court reviews a decision of an administrative body, it is exercising 'exclusive original jurisdiction' ") (citations omitted). The Courts of Appeal, then, exercise appellate jurisdiction over district court decisions concerning the review of decisions of zoning boards. *Dupuis*, [20]17-0052, p. 3, 224 So.3d at 1049. Thus, "[a] reviewing [appellate] court does not consider whether the district court manifestly erred in its findings, but whether the zoning board acted arbitrarily, capriciously or with any calculated or prejudicial lack of discretion." *King v. Caddo Par. Com'n*, 97-1873, pp. 14-15 (La. 10/20/98), 719 So.2d 410, 418.

*Vieux Carre Prop. Owners, Residents & Associates, Inc. v. City of New Orleans Through Bd. of Zoning Adjustments*, 2021-0687, pp. 2-3 (La. App. 4 Cir. 4/6/22), 337 So.3d 979, 981-82.

## DISCUSSION

Although the City and Mr. Hernandez assert several assignments of error, the dispositive issue is whether the BZA's decision to deny LTPOA's appeal was arbitrary and capricious.[4] There is a rebuttable presumption that zoning board decisions are deemed to be valid by reviewing appellate courts, and a party aggrieved

---

[4] On appeal, Mr. Hernandez asserts three assignments of error: (1) the district court erred in finding the BZA's denial was arbitrary, unreasonable, and an abuse of discretion, because the motion to deny did not receive a second vote; (2) the district court erred when it remanded the matter back to the BZA and ordered a vote by the entire Board because there is no law that requires a vote by the entire Board; and (3) the district court erred in vacating the BZA's decision in BZA Docket No. 041-23 because the administrative record demonstrates there was documented legal history of two dwelling units on the Property under CZO Sec. 20.3.W.1.a. The City asserts two assignments of error, which are identical to Mr. Hernandez's second and third assignments of error.

by a BZA decision may seek judicial review through a writ of certiorari. *Id*. at p. 3, 337 So.3d at 982. "The presumption is sufficiently rebutted if the reviewing court determines that the evidence fails to establish a legal and substantial basis for the decision or that the BZA has exceeded its jurisdiction and acted in an arbitrary and capricious manner." *Id.* In the context of zoning decisions, "[t]he terms 'arbitrary and capricious' mean willful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case." *Id.* (citing *Toups v. City of Shreveport*, 2010-1559, p. 3 (La. 3/15/11), 60 So.3d 1215, 2017). An action of a zoning commission will be disturbed only when it is determined that such action is "palpably unreasonable, arbitrary, [or] an abuse of discretion…." *Id*. at pp. 3-4, 337 So.3d at 982 (citing *City of Baton Rouge/Par. Of E. Baton Rouge v. Myers*, 2013-2011, p. 6 (La. 5/7/14), 145 So.3d 320, 327-28). "However, when there is room for two opinions, an action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed an erroneous conclusion has been reached." *Id*. at p. 4, 337 So.3d at 982 (citing *Toups*, 2010-1559, pp. 3-4, 60 So.3d at 1217).

In the matter herein, the Director decided to issue a building permit after finding Mr. Hernandez submitted adequate information documenting a legal history of the rear structure of the Property being used as a dwelling unit and allowed as an Established Two-Family Dwelling under CZO Sec. 20.3.W.1. LTPOA appealed the Director's decision to the BZA. During the May 1, 2023 BZA meeting, the Board considered the following: the administrative record, public comment, presentation from the Department of Safety and Permits, and the CZO. Five of the seven Board members were in attendance; therefore, there was a quorum present for the Board to vote on the appeal. After deliberations, there was a motion to deny the appeal and

10

affirm the Director's decision. However, there was no second, and the motion to deny failed. Subsequently, there was a substitute motion to grant the appeal and overturn the Director's decision. This substitute motion was seconded, but it failed by a 2-3 vote. Finally, there was another substitute motion to defer the appeal for thirty days. This second substitute motion was seconded, but it failed by a 2-3 vote.

Board of Zoning Adjustments Rule III(G) of the BZA's Administrative Rules, Policies & Procedures provides, in pertinent part, that "[t]he concurring vote of four (4) members of the Board shall be necessary to reverse any order, requirement, decision or determination of the Director of Safety and Permits…." Likewise, La. R.S. § 33:4727(D)(2) requires the concurring vote of a majority of the BZA to reverse any decision of the administrative official. This Court has previously held that the failure to adopt a motion by the concurring vote of four BZA members to authorize a variance (which is similar to overturning the decision of the Director) results in the denial of the application. *Old Carrolton Neighborhood Ass'n v. City of New Orleans ex rel. its Bd. of Zoning Adjustments,* 2003-0711 (La. App. 4 Cir. 10/1/03); 859 So. 2d 713. In this case, because there was no motion properly passed to affirm or overturn the Director's decision, by the concurring vote of four members, LTPOA's appeal was denied.

Regardless of the basis for the denial of LTPOA's appeal – be it that the motion to deny appeal would have received a second and the requisite four votes to pass, or as was the case, the appeal was denied because there was no motion properly passed to overturn the Director's decision – the fact remains the BZA denied the appeal. Based on the record before this Court, we find the BZA's failure to approve the appeal and overturn the Director's decision was arbitrary and capricious. "The test of whether a zoning board's action is arbitrary and capricious is whether the

11

action is reasonable under the circumstances." *3000-3032 St. Claude Avenue v. City of New Orleans*, 2022-0813, p. 14 (La. App. 4 Cir. 6/22/23), 368 So.3d 1160, 1171-72. (quoting *Esplanade Ridge Civic Ass'n v. City of New Orleans*, 2013-1062, p. 3 (La. App. 4 Cir. 2/12/14), 136 So.3d 166, 169). "'Capriciously' has been defined as a conclusion reached with no substantial evidence to support it or a conclusion contrary to substantial competent evidence; whereas, the term 'arbitrary' infers a disregard or failure to give proper weight to the evidence." *Id.* at pp. 14-15, 368 So.3d at 1172.

In the matter herein, the Director found the evidence submitted by Mr. Hernandez was sufficient for a determination of a legal documented history of an Established Two-Family Dwelling. Comprehensive Zoning Ordinance Section 20.3.W.1 provides, in pertinent part:

> An established two family or multi-family use must meet the following requirements, as confirmed by Safety and Permits:
>
> a. The structure must have a documented legal history of two units for a two-family dwelling or 4 or fewer units for a multi-family dwelling, as confirmed by Safety and Permits, where documented legal history is determined based on evidence of dwelling units which currently exist but may not be operating on a given property; OR
> …
>
> d. Legal, nonconforming status has been confirmed by the Department of Safety & Permits.

Assuming the rear structure obtained legal, nonconforming status, it is undisputed that it loss this status under CZO Sec. 25.3.C[5] due to non-use of the rear structure

---

[5] Comprehensive Zoning Ordinance Section 25.3.C(1) states:

> A particular use that is established as nonconforming is deemed abandoned when that particular nonconforming use is discontinued or becomes vacant or unoccupied for a continuous period of one-hundred eighty (180) days. An abandoned nonconforming use may not be re-established or resumed regardless of intent. Any subsequent occupancy shall comply with all regulations of the zoning district in

for more than 180 days. Therefore, in order to find the Property was an Established Two-Family Dwelling Mr. Hernandez had to show a documented legal history of the two dwelling units.

Comprehensive Zoning Ordinance Section 26.6 defines dwelling unit as "[a] room, or group of rooms, providing complete, independent living facilities, including permanent provisions for living, sleeping, eating, cooking and sanitation for one or more persons." During the permitting and verification process, Mr. Hernandez produced photographs and hand-drawn sketches of the rear structure. The exterior photographs showed exterior brick of the rear structure matched the exterior brick of the principal structure, which would indicate that both structures were built at or near the same time. The interior photographs of the rear structure showed a bathroom with tilework that appeared decades old, kitchen, laundry room, bedroom, and living space. However, these photographs did not depict a stove, oven, or other actual cooking facilities that would indicate this rear structure contained full kitchen facilities. The lack of independent cooking facilities reveals that this rear structure should not have been considered a separate dwelling unit.

Mr. Hernandez also produced a notarized letter from the previous owner, S. Guilbault, dated October 19, 2022, which stated:

> This letter is to verify that the apartment in the back has been a pat [sic] of this home and was completed 1982 or 1983. There have been some updates on it since. This was my Family home, that I sold to Celso Eric Hernandez 2/25/2022.

---

which the land or structure is located. Where a nonconforming use has ceased operation for renovations in conjunction with a lawfully issued building permit, the nonconforming use shall restore operation within one-hundred eighty (180) days of the cessation of the use.

This letter provides no basis for a finding that the rear structure was a separate dwelling unit. Besides the use of the term "apartment," the letter does not evidence the rear structure was used separate and apart from the principal structure – the single-family home. Further, when this matter was appealed to the BZA, Mr. S. Guilbault submitted an affidavit, dated April 21, 2023, stating: (1) the Property was his childhood residence; (2) the Property's backyard is entirely comprised of a swimming pool and pool cabana; (3) the Property was always a single family residence; (4) the pool cabana was never rented or leased; and (5) his mother, Ms. Covington, convalesced and spent her final days in the pool cabana due to her illness and inability to climb stairs in the main residence. This affidavit supports a finding that the rear structure was not a separate, two-family dwelling unit. Although Ms. Covington convalesced in the rear structure in her later years, this was an exceptional circumstance due to her illness and inability to utilize the main residence. At the BZA hearing, Mr. S. Guilbault testified that he resided in the rear structure from age twenty to twenty-six, and then again later on in time with his daughter until he purchased a house in Gonzales. Nevertheless, there was no evidence of anyone outside of the Covington-Guilbault immediate family residing in the rear structure.

Additionally, Mr. Hernandez produced Orleans Parish Tax Assessor's records, which described the rear structure as a pool cabana. A cabana is "[a]n accessory building or a portion of the main building used as a bathhouse or dressing area in connection with a swimming pool or tennis court." CZO Sec. 26.6. According to CZO Sec. 21.6 Z, a full kitchen with cooking facilities is prohibited in a cabana; however, a bathroom, wet bar, counter space, cabinets, and a refrigerator are all allowed. The interior photographs produced to the Director depict precisely those amenities that are permitted in a pool cabana, not a separate dwelling unit. Further,

14

while "[u]se of a pool house/cabana as temporary sleeping quarters or a dwelling unit is prohibited" under CZO Sec. 26.6 and the Covington-Guilbault family used the rear structure as living space at a certain point in time, there was no evidence that they did so independent of using the principal structure's cooking facilities.

Leading up to the BZA hearing, individuals and organizations submitted letters and emails supporting LTPOA's appeal of the Director's decision. Well over twenty residents of the Lake Terrace neighborhood submitted correspondence expressing their support of appealing the Director's decision. Additionally, the Lakefront Management Authority[6] submitted a letter supporting LTPOA's appeal, which provided, in part, "'All lots in squares No. 1 thru 18 and No. 20 thru 33 of the Lake Terrace Subdivision shall be devoted to single family dwelling'. The site in question is in Square 30 and would appear to clearly fall within this condition."

The record unequivocally shows that although the principal and rear structures were constructed at or near the same time, (1) the Property is located in Single-Family Residential District; (2) the rear structure was never rented or leased; (3) there is no separate utility line for the rear structure; (4) the rear structure does not contain cooking facilities independent from the principal structure; (5) no one outside of the Covington-Guilbault immediate family resided in the rear structure; and (6) Ms. Covington convalesced in the rear structure due to the exceptional

---

[6] According to the Lakefront Management Authority's April 18, 2023 letter addressed to the New Orleans City Planning Commission's Executive Director:

> The Lakefront Management Authority (LMA) is a political subdivision of the State of Louisiana and the governing authority of the non-flood protection assets of the Orleans Levee District ("OLD"). The LMA was created in the wake of Hurricane Katrina and has management and control of the OLD non-flood assets. The OLD developed the land in the 1930s starting from the Lake Ponchartrain Seawall and extending to Allen Toussaint Dr. Lake Terrace subdivision is one of the areas that the OLD created and developed and once the home sites were sold, the OLD retained the obligation for reviewing building restrictions in that subdivision.

circumstance of her illness. As such, based on the overwhelming evidence in the record that established the rear structure was not a separate dwelling unit from the principal structure, we find the BZA's failure to approve the appeal and overturn the Director's decision was arbitrary and capricious.

The district court correctly determined the BZA's denial of LTPOA's appeal was "arbitrary, unreasonable, and an abuse of discretion" and vacated the BZA's May 1, 2023 decision and May 11, 2023 disposition denying LTPOA's appeal of the January 31, 2023 zoning verification. However, the district court incorrectly remanded this matter to the BZA "for a full evidentiary hearing and vote by the entire Board." There is no rule or law that requires the vote of the entire Board. "A quorum of the Board shall consist of four (4) members," and "[t]he concurring vote of four (4) members of the Board shall be necessary to authorize…any other permissible action of the Board…" including reversing the decision of the Director. BZA Rules II(H) and III(G). By finding the BZA's decision was arbitrary, the district court had the authority to reverse the Director's decision. *See* La. R.S. 33:4727 E.[7] As such,

_____

[7] Louisiana Revised Statutes 33:4727 E states:

(1) Any person or persons jointly or severally aggrieved by any decision by the board of adjustment of any officer, department, board, or bureau of the municipality, may present to the district court of the parish or city in which the property affected is located a petition, duly verified, setting forth that the decision is illegal, in whole or in part, specifying the grounds of the illegality. The petition shall be presented to the court within thirty days after the filing of the decision in the office of the board.
(2) Upon the presentation of such petition the court may allow a writ of certiorari directed to the board of adjustment to review the decision of the board of adjustment and shall be prescribed therein the time within which a return may be made and served upon the relator's attorney, that shall be not less than ten days but which may be extended by the court. The party requesting the appeal or writ shall bear the costs of transcribing the auditory recording of the meeting in which the adverse board of adjustment decision was rendered.
(3) The board of adjustment shall not be required to return the original papers acted upon by it, but may return certified or sworn copies thereof or such portions thereof as may be called for by the writ. The return shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision appealed from and shall be verified.

the district court erred in remanding the matter to the BZA and should have issued a judgment granting LTPOA's appeal and reversing the Director's decision. Accordingly, we render judgment granting LTPOA's appeal of the BZA's May 1, 2023 decision and May 11, 2023 disposition and reversing the Director's decision.

## DECREE

For the foregoing reasons, we dismiss LTPOA's motion to dismiss appeal for lack of jurisdiction; convert the June 18, 2024 motion for suspensive appeal and June 28, 2024 motion for devolutive appeal to applications for supervisory writs; grant the writs; affirm in part the district court's ruling that the BZA's denial of LTPOA's appeal was "arbitrary, unreasonable, and an abuse of discretion"; reverse in part the district court's remand of the matter to the BZA "for a full evidentiary hearing and vote by the entire Board"; and render judgment granting LTPOA's appeal of the BZA's May 1, 2023 decision and May 11, 2023 disposition and reversing the Director's decision.

**MOTION TO DISMISS APPEAL DISMISSED; APPEALS CONVERTED TO WRITS; WRITS GRANTED; AFFIRMED IN PART, REVERSED IN PART; JUDGMENT RENDERED.**

---

(4) If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take additional evidence or appoint a referee to take such evidence as it may direct, the cost of which shall be borne by the party who initiated the appeal, and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made.

(5) The court may reverse or confirm, wholly or in part, or may modify the decision brought up for review. Costs shall not be allowed against the board unless it appears to the court that it acted with gross negligence, in bad faith, or with malice in making the decision appealed from. All issues in any proceedings under this Section shall have preference over all other civil actions and proceedings.